**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SAMSUNG ELECTRONICS CO. LTD. and )
SAMSUNG ELECTRONICS AMERICA, INC., )
                                     )
          Plaintiffs, )        Case No. 1:21-cv-02665
                                     )
      v. )        Honorable Rebecca R. Pallmeyer
                                     )
LYNK LABS, INC., )        ██████████████
                                     )
          Defendant. )
                                     )

**SAMSUNG'S MEMORANDUM OF LAW IN
OPPOSITION TO LYNK'S MOTION FOR PARTIAL
SUMMARY JUDGMENT OF LITERAL INFRINGEMENT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     LEGAL STANDARD ........................................................................................ 1

III.    ARGUMENT .................................................................................................... 2

      A.     Lynk's Motion Should Be Denied Because It Relies on Irrelevant and
Inadmissible Evidence and Conclusory Expert Statements. ................................ 2

      B.     Lynk Fails to Establish Infringement of Claim 1 of the '697 Patent. ................... 6

            1.     Lynk Does Not Demonstrate That the S21 Ultra Meets the Proper
Construction of "Package." .................................................................... 6

            2.     Lynk Fails to Show the S21 Ultra's Infringement of the "Battery
Ground Capacitively Coupled …" Limitation. .......................................... 9

            3.     Lynk Fails to Satisfy Its Burden of Proving Infringement of Claim
1 of the '697 Patent. .............................................................................. 10

      C.     Lynk Fails to Establish Infringement of Claim 1 of the '674 Patent. ................... 11

            1.     Lynk Does Not Demonstrate the S21 Ultra's Infringement of the
"Increase a Power . . ." Limitation. ....................................................... 11

            2.     Lynk Fails to Address "Wherein the Antenna is Configured to
Transmit or Receive Alternating Signals." ............................................. 13

            3.     Lynk Fails to Satisfy Its Burden of Proving Infringement of Claim
1 of the '674 Patent. .............................................................................. 14

      D.     Lynk Fails to Present Evidence for Products Other Than the S21 Ultra. ............ 15

IV.    CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby Inc.*,
    477 U.S. 242 (1986) ..................................................................................................... 1

*Brown v. Phillips*,
    801 F.3d 849 (7th Cir. 2015) ...................................................................................... 3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................ 1, 12, 16

*CUPP Computing AS v. Trend Micro Inc.*,
    No. 2020-2262, 2022 WL 16954357 (Fed. Cir. Nov. 16, 2022)............................. 14

*Cytiva Sweden AB v. Bio-Rad Lab'ys, Inc.*,
    2022 WL 767513 (D. Del. Mar. 14, 2022) ............................................................... 5

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*,
    149 F.3d 1309 (Fed. Cir. 1998) .................................................................................. 2

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*,
    90 F.3d 479 (Fed. Cir. 1996) ..................................................................................... 5

*Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
    589 F.3d 1179 (Fed. Cir. 2009) .................................................................................. 6

*Isbell v. Baxter Healthcare, Corp.*,
    273 F. Supp. 3d 9657 (N.D. Ill. 2017) ...................................................................... 4

*Johnson v. Holder*,
    700 F.3d 979 (7th Cir. 2012) .............................................................................. 2, 5, 12

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ...................................... 2

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
    134 S. Ct. 843 (2014). ................................................................................................ 2

*Microsoft Corp. v. AT&T Corp.*,
    127 S. Ct. 1746 (2007) ............................................................................................... 4

*Rohm and Haas Co. v. Brotech Corp.*,
    127 F.3d 1089, 44 U.S.P.Q.2d 1459 (Fed. Cir. 1997) ................................. 2, 11, 15

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    983 F.3d 1367 (Fed. Cir. 2021) ............................................................................. 2, 6

*Versata Software, Inc. v. SAP America, Inc.*,
    717 F.3d 1255 (Fed. Cir. 2013) ............................................................................... 10

*Voip-Pal.Com, Inc. v. Apple Inc.*,
    2019 WL 1332762 (N.D. Cal. 2019) ........................................................................ 3

## TABLE OF AUTHORITIES
(continued)

Page(s)

**Statutes**

35 U.S.C. § 271 ........................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................................... 1

## I.    INTRODUCTION

Lynk's Motion for Partial Summary Judgment of Literal Infringement ("Motion") strays far from satisfying a summary judgment movant's burden: to prove there is no genuine dispute as to any material fact regarding its infringement allegations.  Instead, Lynk presents barebones assertions that rely on conclusory expert statements, which provide no analysis but are based on inadmissible, irrelevant, and unreliable evidence, including unauthenticated YouTube videos about products that are not sold in the U.S.  Lynk also ignores the agreed construction of a claim term and fails entirely to address at least two claim limitations.  Lynk's analysis falls far short of satisfying the high burden of proof required for summary judgment of infringement.  Samsung, therefore, respectfully asks the Court to deny this frivolous Motion.[1]

## II.    LEGAL STANDARD

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment must be denied if there are "any genuine factual issues that properly can be resolved only by a finder of fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986).  All facts must be viewed "in a light most favorable to" the non-movant, and all doubts should be resolved in the non-movant's favor. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998).

For summary judgment of patent infringement, the patentee must prove that each accused product satisfies every element of each asserted claim.  *See Rohm and Haas Co. v. Brotech Corp.*,

---

[1] The two claims at issue in Lynk's Motion are subject to upcoming *Inter Parties* Review ("IPR") hearings before the Patent Trial and Appeal Board ("PTAB") scheduled for December 13, 2022. *See* Dkt. No. 139 at 4.  For these two claims, the PTAB has stated that Samsung had already demonstrated a "reasonable likelihood" of prevailing on invalidity.  *See* Dkt. No. 98-1 at 17; Dkt. No. 98-2 at 19.  Thus, the PTAB's decisions will likely render moot Lynk's Motion.

127 F.3d 1089, 1092, 44 U.S.P.Q.2d 1459 (Fed. Cir. 1997); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). The patentee bears the burden to prove infringement; it is never the accused infringer's burden to disprove it. *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849–50 (2014).

"[E]vidence offered to support . . . summary judgment must be admissible at trial, and affidavits and declarations must be made with personal knowledge." *Johnson v. Holder*, 700 F.3d 979, 982 (7th Cir. 2012). When a movant relies on an expert to support summary judgment of infringement, that expert "must set forth the factual foundation for his infringement opinion in sufficient detail" to prove infringement, with all reasonable inferences drawn in favor of the accused infringer. *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 983 F.3d 1367, 1380–81 (Fed. Cir. 2021). Mere conclusory statements from an expert provide "nothing of value to the judicial process." *Brown v. Phillips*, 801 F.3d 849, 854 (7th Cir. 2015).

## III.  ARGUMENT

### A.  Lynk's Motion Should Be Denied Because It Relies on Irrelevant and Inadmissible Evidence and Conclusory Expert Statements.

Lynk's Motion relies on inadmissible evidence and conclusory statements from its expert, Dr. Rajeev Surati, who does not analyze the actual products at issue and instead bases his opinions on the unverified and unauthenticated work of internet hobbyists.

First, Lynk and its expert rely on inadmissible evidence from unreliable internet sources. Dr. Surati did not analyze Samsung's actual products, which are publicly available, ███████ ████████████████████████████████████████████████████████ ███████████████████████████. *See* Samsung's Additional Proposed Findings of Fact at ¶ 1 ("Sam.-PFF1"). Instead, Dr. Surati based his opinions—the pivotal evidence for several claim elements—on information gleaned from two YouTube videos and two

third-party websites.  *See* Responses to Lynk's PFF at ¶¶ 8, 10, 14, 22; Dkt. No. 144-1 (Surati Decl.) at ¶¶ 10, 12, 16, 22.  These are the kind of "unverified and unsubstantiated" sources that other courts have rejected as unreliable.  *See, e.g.*, *Voip-Pal.Com, Inc. v. Apple Inc.*, 2019 WL 1332762, *15 n.6 (N.D. Cal. 2019) (finding YouTube video's contents to be "unverified and unsubstantiated, and [] therefore subject to reasonable dispute").  These third-party videos and websites are inadmissible without authentication, and they raise more questions than they answer, leaving Samsung guessing about who performed the tests and teardowns shown in the videos, whether the devices shown are actually S21 Ultra phones, whether they were modified after sale, which software version was used, and whether the devices were U.S. or international versions.  *See Isbell v. Baxter Healthcare, Corp.*, 273 F. Supp. 3d 965, 977 (N.D. Ill. 2017) ("Evidence at the summary judgment stage must be admissible at trial.").

Second, Lynk's "evidence" demonstrates its own lack of relevance and reliability.  For the '697 Patent, Dr. Surati cites a YouTube video posted by a user named "JerryRigEverything."  Sam.-PFF2.[2]  In that video, the narrator states that the phone shown is "one of the international S21 variants"—*i.e.*, not a model sold in the U.S.—and explains that "it's a stretch to even consider the international and domestic variants to be the same product" due to hardware differences between the two models.[3]  Sam.-PFF3.  Lynk fails to explain how the device shown in the video is relevant to the U.S. version of the S21 Ultra accused of infringement in this case.  *See Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746, 1747 (2007) ("no infringement occurs when a patented

---

[2] Similarly, for the '674 Patent, Lynk relies on a second YouTube video posted by "Lampofilm." Sam.-PFF5.  The video does not identify the specific device shown or the person operating the device.  Sam.-PFF6.

[3] ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████.

product is made and sold in another country").[4]  And this video was posted on January 28, 2021, almost four months **_before_** the '697 Patent issued.  Sam.-PFF2; PFF1.  Lynk presents no evidence demonstrating that the product allegedly shown in the YouTube video accurately represents products made, used, sold, offered or sale, or imported by Samsung after the '697 Patent's issuance—a threshold requirement for literal patent infringement.  *See GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) ("Patent rights are created only upon the formal issuance of the patent[.]"); *Cytiva Sweden AB v. Bio-Rad Lab'ys, Inc.*, 2022 WL 767513, at *2 (D. Del. Mar. 14, 2022) (finding YouTube videos made before patent issuance "do not show—directly or circumstantially—direct infringement of the patent").  Lynk cannot prove infringement of the U.S. version of the S21 Ultra using an inadmissible YouTube video, made before patent issuance, about an international model not sold in the U.S.

Similarly, Lynk relies on an image from third-party website iFixit.com for the "laser" limitation of the '697 Patent.  *See* Sam.-PFF29; Responses to Lynk's PFF at ¶ 8.  Here, too, the problems are obvious.  The image Lynk points to does not provide any way to verify that the pictured device is actually an S21 Ultra, and if so, what version or model it is, when and where it was sold, and whether it has been modified after sale.  Indeed, Lynk did not even attempt to take discovery from iFixit.com to authenticate or verify this information.  Lynk cannot rely on such inadmissible evidence to support its summary judgment motion.  *Johnson*, 700 F.3d at 982.

Third, even when taking Lynk's unreliable "evidence" at face value, Lynk's expert provides no analysis and simply concludes without explanation that the relevant claim elements are met.  For example, citing an image from the iFixit.com website, Dr. Surati concludes—without

---

[4] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████ .

any analysis—that the "form factor" of the device shown in the image proves that "the laser autofocus of the Accused Telephone Instrumentalities comprises a semiconductor based laser such as a laser diode." Responses to Lynk's PFF at ¶ 8; Dkt. No. 144-1 (Surati Decl.) at ¶ 10. This conclusory statement does not identify the "form factor" to which Dr. Surati refers, nor does it explain how that "form factor" supports his conclusion. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Because Dr. Surati fails to "set forth the factual foundation for his infringement opinion," the Court should not credit his unsupported and barebones assertions. *See SIMO Holdings*, 983 F.3d at 1380–81 (discrediting conclusory expert opinions).

"To satisfy the summary judgment standard, a patentee's expert must set forth the factual foundation for his infringement opinion in sufficient detail for the court to be certain that features of the accused product would support a finding of infringement . . . with all reasonable inferences drawn in favor of the non-movant." *Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009). Here, the Court would need to apply the opposite standard for Lynk's Motion to have even specious appeal—the Court would have to draw all inferences in favor of the *movant* by inferring that Lynk's internet videos and images are relevant to the accused products (without any supporting evidence) and Lynk's conclusory expert statements are sufficient (without sufficient factual foundation). And the dependence of Lynk's Motion on unreliable, inadmissible evidence and conclusory expert statements goes far beyond the examples described here. Under the proper standard for summary judgment, Lynk's Motion offers negligible credibility and, on

this basis alone, Lynk's Motion should be denied.

**B.     Lynk Fails to Establish Infringement of Claim 1 of the '697 Patent.**

Lynk fails to establish that all elements recited by Claim 1 of the '697 Patent are met by the S21 Ultra.  For example, Lynk fails to show that the S21 Ultra satisfies the "package" limitation and fails to present any evidence for the "battery ground capacitively coupled . . ." limitation.

**1.     Lynk Does Not Demonstrate That the S21 Ultra Meets the Proper Construction of "Package."**

Lynk's has not demonstrated—and cannot demonstrate—how the S21 Ultra meets the "package" limitation of Claim 1 of the '697 Patent under its proper and agreed upon construction. Specifically, Lynk fails to establish that the phone's casing is an "integrated unit" including the claimed components that serves as a "discrete component" in an LED lighting system, as required by the proper and agreed construction of "package."

The term "package," as used in the '697 Patent, does ***not*** have its non-technical meaning as an object or group of objects packed in a container.  Sam.-PFF7.  Rather, the '697 Patent explicitly defines the term "package," consistent with its use in the field of electronics, and the parties have agreed to adopt that construction: "'package' . . . is defined herein as ***an integrated unit*** meant to be used as ***a discrete component in*** either of the manufacture, assembly, installation, or modification of ***an LED lighting device or system***."  Sam.-PFF8; Dkt. No. 137 at 3 (emphasis added).  In other words, according to the agreed construction, a "package" in the context of the '697 Patent is not just a container holding other components, but is an "integrated unit" of various circuit components, as specified in the claim.  *See* Sam.-PFF8; PFF2.  This is confirmed throughout the '697 Patent, which consistently uses "package" to describe an integrated unit of circuit components.  Sam.-PFF9 (citing '697 Patent at 5:26–29, 7:15–18, 16:47–48, 16:49–54).  This package (including its integrated components) is then used as a "discrete component" for an LED

lighting system. Sam.-PFF8. Because Lynk fails to present any evidence on how the S21 Ultra infringes Claim 1 under this agreed construction, Lynk's Motion must be denied.

In support of its motion, Lynk relies primarily on the declaration of its expert, Dr. Surati. However, Dr. Surati fails to apply the parties' agreed construction of "package" and Lynk's argument fails for, at least, two reasons.

*First*, while parroting portions of the agreed construction, Dr. Surati ignores its substance and instead reads the term to mean only a container (*i.e.*, the "casing") to hold other components. This is not only contrary to the agreed construction and its usage throughout the patent, but also improperly divorces the construction of "package" from its usage in the claims. The claims explicitly require various components (*i.e.*, "at least one LED, the semiconductor device, the data receiver, the circuit, and the battery ground") to all be "contained within a package." PFF2. And the agreed construction requires that the "package" must be an "***integrated unit***," not merely a container for these various different components. But Dr. Surati does not identify any "integrated unit" including these components. Instead, he argues that the casing alone satisfies the "package" limitation. This is not only illogical—the casing cannot be integrated with itself—but is contrary to the teachings of the patent, which describes the various components as being "integrated into" the "package" to form an "integrated unit." Sam.-PFF9–10. For example, the '697 Patent describes "LED circuits that are ***integrated into*** small form LED ***packages*** that include ***integrated*** capacitors or resistor capacitor 'RC' networks." Sam.-PFF10 (citing '697 Patent at 7:15–18) (emphasis added). The patent further describes, in another embodiment, that "LEDs 66 and 68 are ***integrated into*** a ***package*** 80 . . . along with capacitor 70." Sam.-PFF10 (citing '697 Patent at 15:6–9) (emphasis added); *see also id.* ('697 Patent at 14:15–20, 14:59–61, 15:20–24, 15:50–52, 15:55–58, 18:24–33, 18:50–57). Thus, Dr. Surati's conclusory statement fails to establish how the

S21 Ultra's "casing" alone satisfies the claim requirement that the "LED, the semiconductor device, the data receiver, the circuit, and the battery ground are all contained within a package" under the agreed construction of "package" as an "integrated unit." *See* Sam.-PFF12.

Second, even if the casing holding all the other components of the smartphone could be deemed an "integrated unit," Dr. Surati fails to explain how this entire smartphone—an end product in itself—is "a discrete component" of "an LED lighting system," which Dr. Surati also alleges to be the smartphone. Dkt. No. 144-1 (Surati Decl.) at ¶¶ 19–20. Putting aside Dr. Surati's failure to explain how the S21 Ultra—a smartphone—is even an "LED lighting system," Lynk's infringement theory is logically flawed.[5] A "discrete component" must be combined with other components to produce an end product. *See* Sam.-PFF9–10. But Lynk essentially argues that the S21 Ultra smartphone (an end product) is both a "LED lighting system" and "a discrete component" of the same LED lighting system. Both cannot be true. Sam.-PFF13.

Lynk's illogical infringement theory appears to be based on a failed claim construction position that Lynk surrendered months ago. Lynk's original proposed construction for "package" modified the specification's explicit definition of that term by stating that "a 'discrete component' may be an ***end product***." Sam.-PFF30 (emphasis added). Samsung's Opening Claim Construction Brief demonstrated this to be incorrect because it contradicts the specification's definition and usage of the term. *See* Dkt. No. 125 at 4–7. Faced with Samsung's overwhelming claim construction evidence, Lynk conceded that its proposal equating "discrete component" with "end product" is incorrect by withdrawing that construction and "accept[ing]" Samsung's position. *See* Dkt. No. 133 at 4 ("Lynk accepts Samsung's proposed construction of 'package'"). Having agreed

---

to Samsung's construction, Lynk cannot now "collaterally attack the claim construction it has agreed to" by reverting to its original position. *Versata Software, Inc. v. SAP America, Inc.*, 717 F.3d 1255, 1262 (Fed. Cir. 2013). Yet Lynk's infringement theory is based on the same interpretation that it has conceded to be incorrect: that the S21 Ultra's casing and the components within—*i.e.*, the entire end product—qualifies as a "discrete component" of an LED lighting system. The Court should not accept Lynk's blatant attempt to avoid the agreed construction.

The Court should reject Lynk's unsupported infringement argument and instead rule that the S21 Ultra does not infringe Claim 1 of the '697 Patent based on the agreed construction. At a minimum, given Lynk's lack of evidence and analysis, there is at least a genuine dispute of material fact as to whether the "package" limitation is met. This reason alone is sufficient for the Court to deny the Motion with respect to the '697 Patent.

### 2. Lynk Fails to Show the S21 Ultra's Infringement of the "Battery Ground Capacitively Coupled …" Limitation.

While failing to show one limitation in the accused products is grounds sufficient to deny Lynk's motion, Lynk also fails to show infringement of, at least, another limitation: "a ***battery ground capacitively coupled*** to at least one of the data receiver, the circuit, the at least one LED, or the semiconductor device via a conductor." PFF2. This claim limitation requires a "battery ground" to be "capacitively coupled" to at least one recited component. *Id.* But Lynk's Motion does not address this requirement—it merely shows an image of a battery (excerpted from an inadmissible YouTube video) and a separate circuit schematic of the "BT/WiFi module," without presenting any evidence explaining how they are allegedly connected, let alone "capacitively coupled," as required by the claims. *See* Motion at 8–9. ██████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████. Thus, Lynk's Motion should be denied for failing to address all limitations of the claim. *See Rohm*, 127 F.3d at 1092 ("To show literal infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim.").

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████  ██  ███████

███████████████████████████████████████

████████████████████████████

### 3. Lynk Fails to Satisfy Its Burden of Proving Infringement of Claim 1 of the '697 Patent.

Lynk's Motion presents a multitude of shortcomings that, taken independently, would each justify denial of the Motion with respect to the '697 Patent. The "package" and "battery ground" claim limitations are just two examples. Lynk's Motion and supporting expert declaration contain a litany of other mistakes and erroneous assumptions. ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████. Moreover, as described above in Section III.A, Lynk relies on inadmissible evidence—a YouTube video and two third party websites—for three elements of Claim 1. Motion

at 5–6, 8–9; Dkt. No. 144-1 (Surati Decl.) at ¶¶ 10, 12, 16; Samsung's Responses to Lynk's PFF at ¶¶ 8, 10, 14; *see also Johnson*, 700 F.3d at 982 ("[E]vidence offered to support . . . summary judgment must be admissible at trial[.]").  Given Lynk's failure to meet its burden on multiple claim limitations, the Court should deny Lynk's Motion.  *See Celotex*, 477 U.S. at 323.

### C.  Lynk Fails to Establish Infringement of Claim 1 of the '674 Patent.

Lynk fails to establish that all elements recited by Claim 1 of the '674 Patent are met by the S21 Ultra.  For example, Lynk fails to show that the S21 Ultra satisfies the "increase a power . . ." limitation and fails to present any evidence for the "alternating signals" limitation.

#### 1.  Lynk Does Not Demonstrate the S21 Ultra's Infringement of the "Increase a Power . . ." Limitation.

Lynk fails to demonstrate that the S21 Ultra "increase[s] a power supplied to the LED circuit when the circuit detects the touch."  Relying on a second unverified and inadmissible YouTube video, Lynk accuses the S21 Ultra's "double touch functionality"—a feature that, according to Lynk, turns on the screen after a user taps the off-screen twice.  *See* Dkt. No. 144-1 (Surati Decl.) at ¶ 22.  But Lynk's YouTube video and testing conducted by Samsung's expert, Dr. Miltiadis Hatalis, both confirm that the S21 Ultra does not increase power to its display when its user interface "detects [a] touch."  Sam.-PFF18–21.  Thus, Lynk's unreliable evidence, even if accepted, fails to establish infringement of this limitation.

The accused "double touch functionality" does not increase power to the phone's display "when the [capacitive sensing] circuit detects the touch."  Samsung's expert, Dr. Hatalis, confirms through testing of a S21 Ultra device that the accused feature does not turn on the phone's screen when a user touches the screen.  Sam.-PFF18.  In fact, the phone's screen does not turn on with two successive touches, either.  Sam.-PFF19.  Instead, to use the "double touch functionality," the user's finger must touch and leave the screen, and then touch and leave the screen again, all within

a predetermined time, for the screen to turn on. Sam.-PFF20. It is only after the second time the finger leaves the screen—assuming all other actions were executed within the required time constraints—that the display turns on. Sam.-PFF21. Indeed, Dr. Hatalis confirmed that the phone's screen **_does not_** turn on during a user's touch, as demonstrated by the fact that the screen remains off if a user's finger remains on the screen after two touches. *See* Sam.-PFF19. Simply put, it is not an immediate touch that activates the screen but rather it is a series of actions, including multiple taps on the screen, all within a specified time, that causes the S21 Ultra's screen to turn on. Lynk's YouTube video is not inconsistent and shows the same operation of the screen turning on only after the proscribed series of actions. Sam.-PFF22. Thus, the accused "double touch functionality" does not meet the claim limitation because the display's power does not change "when the [capacitive sensing] circuit detects the touch."

Lynk's own arguments before the PTAB confirm that the "double touch functionality" does not infringe. In an IPR proceeding involving the '674 Patent, Lynk argued that the "when the circuit detects the touch" claim limitation cannot be met by prior art that increases power upon detection of "**_multiple touches_** and sliding of the finger to change touchscreen display brightness." Sam.-PFF24 ('674 IPR Sur-Rep.) (emphasis added); *see also* Sam.-PFF23.[6] Thus, Lynk's own arguments before the PTAB—that the claim limitation cannot be satisfied by "multiple touches"— precludes Lynk's infringement theory in this case based on the "double touch functionality." *See CUPP Computing AS v. Trend Micro Inc.*, No. 2020-2262, 2022 WL 16954357, at *4 (Fed. Cir. Nov. 16, 2022) ("a patentee's disclaimer during an IPR can bind the patentee to a narrower claim

---

[6] Similarly, in an IPR for the '697 Patent, Lynk argued that the claim limitation "when the circuit detects a touch" cannot be satisfied by a prior art that increases power through "multiple touches and a sliding physical movement to increase screen brightness, not just a touch." Sam.-PFF25 ('697 IPR Sur-Rep.).

interpretation in . . . a district court infringement proceeding" even when the PTAB does not "accept [the] patent owner's arguments"). To be clear, Samsung does not agree with Lynk's PTAB arguments and its reading of the prior art as applied to the claim. Regardless, as Lynk's arguments before the PTAB confirm, the claim requires that a "touch" causes a power change. Sam.-PFF23–25. Here, there is no evidence that the S21 Ultra's screen changes "when the circuit detects" any touch, whether one or multiple. Sam.-PFF18–19. Rather, the only evidence in the record demonstrates the opposite—the screen turns on only after a specific sequence of actions, including multiple taps on the screen, all within a prescribed time. Sam.-PFF20–21.

Lynk has failed to carry its burden of demonstrating how the accused S21 Ultra "increase[s] a power supplied" to any LED circuit "when the circuit detects the touch." At a minimum, summary judgment should be denied because there is a material factual dispute as to whether it is the "touch" portion of the "double touch functionality" that causes the screen to turn on.

### 2. Lynk Fails to Address "Wherein the Antenna is Configured to Transmit or Receive Alternating Signals."

As a second, independent failing in its infringement analysis for Claim 1 of the '674 Patent, Lynk fails to address the "wherein the antenna is configured to transmit or receive alternating signals" limitation. *See generally* Motion at 13; PFF9–11; Dkt. No. 144-1 (Surati Decl.) at ¶¶ 11–13. Neither Lynk's Motion nor its expert declaration submit *any* evidence or present *any* analysis of why this claim limitation is alleged to be met.

In the Motion, Lynk accused a third party component—"a Broadcom BCM4389 BT/WiFi chip"—of meeting the "data communications circuit" limitation of Claim 1.[7] Motion at 13. But Lynk, despite having subpoenaed Broadcom nearly a year ago (*see* Sam.-PFF26), cites no

---

[7] Claim 1 of the '674 Patent recites "a data communications circuit having an antenna," and further limits the "antenna" by reciting "wherein the antenna is configured to transmit or receive alternating signals." PFF20.

evidence, either produced by Broadcom or otherwise, to show whether the "alternating signals" limitation is satisfied. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████. By skipping an entire claim limitation, Lynk fails to carry its burden of establishing infringement. At a minimum, this omission raises a genuine dispute of material fact as to whether this limitation is met, and the Court should deny the Motion with respect to the '674 Patent. *See Rohm*, 127 F.3d at 1092.

### 3. Lynk Fails to Satisfy Its Burden of Proving Infringement of Claim 1 of the '674 Patent.

Lynk's infringement arguments for the '674 Patent present a myriad of failures that would each alone justify denial of the Motion. Beyond the "increase a power" and "alternating signals" limitations, Lynk's Motion contains many other blatant errors and shortcomings. █████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ ████████████████

████████████████████████. Moreover, Claim 1 recites "detect[ing] *touch* via capacitive sensing," and then requires the same "touch" to trigger a power increase: "increase a power supplied to the LED circuit when the circuit detects *the touch*." PFF20 (Claim 1, emphases added). But Lynk accuses one feature—████████████████████████████—as "detect[ing] touch via capacitive sensing" and then accuses a different, unrelated feature—the "double touch functionality" using the touchscreen—for the next limitation which requires that *same touch* to

increase a power supplied.  Motion at 14; Dkt. No. 144-1 (Surati Decl.) at ¶¶ 14, 15, 22.  Further, as described above in Section III.A., Lynk relies on an unverified YouTube video and an unauthenticated third-party website as infringement evidence for two claim elements, and cites irrelevant deposition testimony for another element of Claim 1 of the '674 Patent.  Motion at 13–14; Dkt. No. 144-1 (Surati Decl.) at ¶¶ 12, 14–15, 22; Samsung's Responses to Lynk's PFF at ¶¶ 10, 13, 22.  Given Lynk's failure to meet its burden on multiple claim limitations, the Court should deny Lynk's Motion.  *Celotex*, 477 U.S. at 323.

### D. Lynk Fails to Present Evidence for Products Other Than the S21 Ultra.

Lynk's Motion fails to present any evidence relating to products other than the S21 Ultra, and it fails to account for material differences between different models of Samsung's smartphones.  Sam.-PFF27; *see also* Samsung's Responses to Lynk's PFF at ¶¶ 5, 9–11, 14. Because Lynk has not identified what products are allegedly "substantially and/or reasonably similar," and it has not presented evidence demonstrating any such alleged similarity, the Court should deny Lynk's Motion with respect to the unidentified "substantially and/or reasonably similar" products.

## IV. CONCLUSION

For the foregoing reasons, Samsung respectfully asks the Court to deny Lynk's Motion.

Dated:  November 28, 2022          Respectfully submitted,

*/s/ Marc J. Pensabene*
Ryan K. Yagura (Cal. Bar No. 197619)
ryagura@omm.com
Nicholas J. Whilt (Cal. Bar No. 247738)
nwhilt@omm.com
Xin-Yi Zhou (Cal. Bar No. 251969)
vzhou@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone:  213-430-6000
Facsimile:  213-430-6407

Darin Snyder (Cal. Bar No. 136003)
dsnyder@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone:  415-984-8700
Facsimile:  415-984-8701

D. Sean Trainor (D.C. Bar No. 463514)
dstrainor@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street NW
Washington, DC 20037
Telephone:  202-383-5300
Facsimile:  202-383-5414

Marc J. Pensabene (N.Y. Bar No. 2656361)
mpensabene@omm.com
Laura Bayne Gore (N.Y. Bar No. 5172879)
lbayne@omm.com
**O'MELVENY & MYERS LLP**
Times Square Tower, 7 Times Square
New York, NY 10036
Telephone:  213-326-2000
Facsimile:  213-326-2061

Dennis J. Abdelnour (Ill. Bar No. 6292242)
Ron N. Sklar (Ill. Bar No. 6304022)
**HONIGMAN LLP**
155 North Wacker Drive, Suite 3100
Chicago, IL 60606
Telephone: 312-701-9300
Facsimile: 312-701-9335
Email: dabdelnour@honigman.com
Email: rsklar@honigman.com

*Attorneys for Plaintiffs Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the above SAMSUNG'S MEMORANDUM OF LAW IN OPPOSITION TO LYNK'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF LITERAL INFRINGEMENT was filed on November 28, 2022 with the Northern District of Illinois ECF System, serving a copy on all parties.

*/s/ Marc J. Pensabene*